United States District Court
DISTRICT OF NEW MEXICO

| | |
|---|---|
| S.E.B.M., *a minor*, *by and through her next friend*, MARIA MENDEZ FELIPE,<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>*Defendant*. | No. 1:21-cv-00095-JHR-LF |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S RULE 59(e) MOTION**

Under Federal Rule of Civil Procedure 59(e), Plaintiff S.E.B.M., through next friend Maria Mendez Felipe, asks this Court to reconsider and vacate its March 3, 2023 decision dismissing this Federal Tort Claims Act (FTCA) lawsuit in its entirety for want of subject-matter jurisdiction. *See* ECF 62, 65.

Plaintiff, however, falls well short of satisfying Rule 59(e)'s demanding standard for the "extraordinary remedy" of undoing a final judgment. Wright & Miller, Fed. Prac. & Proc. § 2810.1 (2023) (Wright & Miller). Indeed, both of Plaintiff's arguments for reconsideration lack merit and should be rejected. *First*, Plaintiff argues that "newly discovered evidence" requires reopening this case, but Plaintiff did not diligently pursue the materials that she relies on before final judgment, and those materials are, in any event, cumulative of arguments that Plaintiff made opposing the government's motion to dismiss and that this Court has already rejected — they add nothing new to this case. ECF 65 at 3–8. *Second*, Plaintiff argues that this Court "clearly erred" in its FTCA analysis, *id.* at 9-26, but Plaintiff's assertions improperly "rehash previously considered and rejected arguments," Baicker-McKee, Fed. Civ. Rules Handbook 1279 (2023) (Baicker-McKee). Neither

argument justifies the extraordinary remedy of Rule 59(e) relief, and Plaintiff's motion should be denied.

## BACKGROUND

**A.** In February 2021, Plaintiff sued the United States under the FTCA for intentional infliction of emotional distress (IIED) and negligence, alleging that the government unlawfully separated her from her father after they crossed the U.S.-Mexico border. *See* ECF 1. Citing government and media reports, Plaintiff asserted that the government prosecuted her father and other individuals without legal status specifically to separate families as part of a government program, led by then-President Trump, designed to deter asylum seekers. *E.g.*, *id.* ¶¶ 1-2, 18, 20, 23-26, 48.

**B.** The government moved to dismiss Plaintiff's lawsuit for want of subject-matter jurisdiction under Rule 12(b)(1) on three separate grounds. *First*, there is no private-person analog under the FTCA for Plaintiff's IIED and negligence claims. *Id.* at 9–15. *Second*, the FTCA's discretionary-function exception covers the government's decision to prosecute Plaintiff's father — a decision that, by operation of federal law, required the government to place Plaintiff in the care of the Department of Health and Human Services' Office of Refugee Resettlement (ORR). *Id.* at 15–24. *Third*, the FTCA's due-care exception applied to the government's actions in separating Plaintiff from her father and placing her in ORR's care. *See* ECF 16 at 24–27.

Plaintiff opposed the government's motion, arguing that the government "mischaracterize[d]" and "recast[]" her claims as "arising from [the United States'] general" and discretionary "decision to enforce federal immigration laws." ECF 41 at 5 (quoting ECF 16 at 14). Instead, Plaintiff argued, her claims arose from alleged "malicious conduct of government officials, including allegations that Defendant tore Plaintiff from her father's arms,

withheld information about each family member's whereabouts, isolated Plaintiff from nearly all communication, refused to reunite Plaintiff with her father after he left criminal custody, delayed Plaintiff's release to her grandmother, and used criminal prosecutions as a pretext to separate small children from their parents." *Id.* at 5–6.

Briefing on the government's motion to dismiss continued with the government's reply, ECF 45; Plaintiff's surreply, ECF 49; Plaintiff's notice of supplemental authority, ECF 60; and the government's response to that notice, ECF 61.

**C.** In a March 6, 2023 opinion, the Court granted the government's Rule 12(b)(1) motion and dismissed Plaintiff's FTCA lawsuit in its entirety for want of subject-matter jurisdiction. *See* ECF 62, 63. Addressing all three of the government's jurisdictional arguments under the FTCA, the Court summarized its conclusions as follows:

> [Plaintiff's] intentional infliction of emotional distress and negligence claims, even if brought against a private person under the same circumstances, would not succeed under state law. And although [Plaintiff] argues that she is suing for her separation, not her father's prosecution, the direct link between those events makes it impossible to sue for one and ignore the other. The government had discretion to prosecute [Plaintiff's] father, that prosecution did not violate any other federal law, and the government's actions after [Plaintiff's] father was charged were a combination of mandatory actions taken with due care and discretionary actions for which [Plaintiff] cannot sue. This Court thus lacks jurisdiction to hear her claims and must dismiss this case.

ECF 62 at 2; *see also id.* at 8–17 (state-law-analog analysis), 17–32 (discretionary-function and due-care analysis).

**D.** Twenty-eight days after the Court's ruling, Plaintiff filed this Rule 59(e) motion for reconsideration, on April 3, 2023. *See* ECF 65. She raises two arguments. *First*, summarizing "[e]xamples of … new documents," Plaintiff contends that the Court should vacate its decision and allow her to amend her complaint under Rule 15 because "[s]everal key documents have recently been made available to [her] that significantly impact the resolution

of key points" in this case. *Id.* at 3-8. *Second*, she argues in the alternative that the Court should vacate its decision because it "contains clear error, as the Court misapprehended [her] arguments in key ways, which led [the Court] to fail to properly analyze the extent to which it possessed subject matter jurisdiction over [her] claims." *Id.* at 8–26.

### ARGUMENT

Rule 59(e) relief is "quite difficult to obtain": It is discretionary and an "extraordinary remedy, reserved for exceptional circumstances, and granted only sparingly." Baicker-McKee, at 1277 & n.102 (citing *Nelson v. Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019)); *see also, e.g.*, Wright & Miller § 2810.1 ("[R]econsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly"). Indeed, the "deck is stacked against a movant for reconsideration," *United States v. Eccleston*, 2020 WL 6392821, at *25 (D.N.M. 2020), because "once [a] district court enters judgment, the public gains a strong interest in protecting [that judgment's] finality," *Nelson*, 921 F.3d at 929. "Given the strength of this interest in finality," the Tenth Circuit has "restricted district courts' discretion when ruling on [Rule 59(e)] motions," *id.*, and "Rule 59(e) motions typically are denied," Wright & Miller § 2810.1.

One such restriction is that Rule 59(e) cannot be used to "revisit issues already addressed," *Nelson*, 921 F.3d at 929, or to "relitigate old matters" already asserted, Wright & Miller § 2810.1; *see also, e.g.*, Baicker-McKee, at 1279 ("Nor, as the case law familiarly incants, should the motion be used to merely rehash previously considered and rejected arguments"). In other words, a reconsideration motion is "not another opportunity for the losing party to make its strongest case, rehash arguments, or revamp previously unmeritorious arguments." *In re Sun Healthcare Grp.*, 214 F.R.D. 671, 673 (D.N.M. 2003).

Instead, movants must demonstrate, for example, "new evidence previously unavailable," *Pitts v. Bureau of Prisons*, --- F. App'x ----, 2023 WL 2945855, at *2 (10th Cir. 2023), which is "not merely cumulative" and would be "likely to cause a new result," Baicker-McKee, at 1278. "If a party is seeking to supplement its Rule 59(e) motion with 'new evidence,' the party must show either that (a) the evidence is newly discovered, or (2) if the evidence was available when … judgment was granted, that counsel made a diligent though unsuccessful attempt to discover the evidence." *Sun Healthcare*, 214 F.R.D. at 673.

Movants may also seek Rule 59(e) relief by arguing the "need to correct clear error." *Pitts*, 2023 WL 2945855, at *2. As Plaintiff acknowledges, clear error requires proof of an "arbitrary, capricious, whimsical, or manifestly unreasonable judgment." ECF 65 at 2 (quoting *Wright v. Abbott Labs.*, 259 F.3d 1226, 1236 (10th Cir. 2001)).

Plaintiff does not satisfy these demanding standards, and her Rule 59(e) motion should be denied. Indeed, both her (I) new-evidence and (II) clear-error arguments lack merit.

I. **PLAINTIFF'S NEW-EVIDENCE ARGUMENTS FAIL**

Plaintiff argues, first, that the Court should vacate its decision and allow her to amend her complaint because she uncovered "new evidence" impacting her claims — documents that *The Atlantic* published in a December 31, 2022 article entitled "The Family-Separation Files" — that she could not have uncovered before final judgment despite her diligent efforts. *See* ECF 65 at 3–8. Her argument fails for multiple reasons.

**A.** At the threshold, Plaintiff does not attach to her motion any of the "new documents" that she relies on, even though they are allegedly "highly relevant to her case." *See* ECF 65 at 4 n.2. Plaintiff thus effectively places the burden on the government — and the Court — to determine whether Plaintiff's characterizations accurately match those documents and

whether the documents are in fact both "new" and "highly relevant" as Plaintiff claims they are. *See id.* at 4–5 (bulleted summaries).

But under Rule 59(e), movants for reconsideration "carry the *full burden* of production: *they* must persuade the Court, using only the evidence … they put before it, that it should change its prior ruling; *they* must do all of the legwork, and not rely on the Court to do any supplemental fact-finding." *Eccleston*, 2020 WL 6392821, at *25 (emphases added). Plaintiff's failure to link her assertions of "new" evidence to specific documents attached to her motion does not meet these standards, and her new-evidence argument should be rejected on this ground alone. *See, e.g.*, Baicker-McKee, at 1280 ("The burden of proving that Rule 59(e) warrants the requested relief lies with the moving party").

**B.** Plaintiff's assertions of diligence in uncovering the *Atlantic* materials also lack merit. The *Atlantic* materials were published on December 31, 2022, and the Court entered final judgment on March 6, 2023 — 65 days later. *See* ECF 6. Yet during that 65-day time frame, Plaintiff did not contact the government or the Court to attempt to seek additional time to review the *Atlantic* materials or to file an amended complaint under Rule 15 based on those materials. *See* Fed. R. Civ. P. 15(a)(2) (amendments permitted "with the opposing party's written consent or the court's leave," and "court[s] should freely give leave when justice so requires"). Instead, Plaintiff waited until April 3, 2023 — 28 days after final judgment — to raise the *Atlantic* materials for the first time in this Rule 59(e) motion.

Plaintiff attempts to justify this delay by arguing that the *Atlantic* materials are voluminous and that she "required sufficient time" to review them. ECF 65 at 4. The *Atlantic* materials, however, are only 820 pages total, and most of the documents are between only one and three pages long. *See* Caitlin Dickerson, *The Family Separation Files, Full*

*collection*, The Atlantic (Dec. 31, 2022) (DocumentCloud folder, listing page counts for all documents). Plaintiff flags one document as "total[ing] over 500 pages," but that document — a House Judiciary Committee Report entitled "The Trump Administration's Family Separation Policy: Trauma, Destruction, and Chaos" — was publicly released in October 2020, *i.e.*, four months before Plaintiff filed this lawsuit in February 2021, and in fact, Plaintiff cited this report in her own complaint. *See* ECF 1 ¶¶ 19 n.4, 39 n.35, 47 n.45. So that document could have been swiftly ruled out as "new evidence," and Plaintiff offers no explanation why she required 86 days — from December 31, 2022 to March 27, 2023, three weeks after final judgment — to review the small volume of remaining materials. Plaintiff thus cannot demonstrate that she "made a diligent though unsuccessful attempt to discover the evidence" before final judgment. *Sun Healthcare*, 214 F.R.D. at 675.

**C.** Finally, Plaintiff's assertions that this "new" evidence is "highly relevant" falter, as the *Atlantic* materials are "merely cumulative" of arguments that this Court already considered and rejected, and Plaintiff's other contentions of relevance are conclusory. Baicker-McKee, at 1278.

**1.** Plaintiff says, first, that the *Atlantic* materials are "highly relevant to the government's intent in separating Plaintiff from her father, which is a key factor" for her IIED claim, because they purportedly show that the government acted with "malicious intent in prosecuting [her] father for the purpose of separating him from [her]." ECF 65 at 5–7. But these allegations were squarely before the Court on the motion to dismiss, and the Court specifically recognized its duty to "accept [those allegations] as true." ECF 62 at 6–7.

Indeed, Plaintiff's complaint alleges that the government "forcibly separate[d] families" to "intentionally cause pain and suffering to parents and children." ECF 1 ¶¶ 48–49;

*see also, e.g.*, ECF 1 ¶¶ 1-2, 18, 20, 23-26. The government addressed those allegations in its motion to dismiss. *See* ECF 16 at 22 (discussing "thought processes of the pertinent decisionmakers"). Plaintiff argued in response that the government allegedly "used criminal prosecutions as a pretext" to separate families in her opposition to the motion to dismiss. ECF 41 at 5–6; *see also id.* at 3, 10, 13. And the government addressed those arguments again in its reply. *See* ECF 45 at 5 (discussing "motivations of the decisionmakers").

The Court considered all these arguments and ruled for the government, specifically acknowledging Plaintiff's allegations that the "purpose of the Pilot Program was to 'use the trauma resulting from family separations, and the consequent media reporting about that trauma, to deter future asylum seekers.'" ECF 62 at 3 (quoting ECF 1 ¶ 2). The Court held that, while "conduct [that] was intentional" can support an IIED claim, that conduct can be "privileged" when the defendant "has a legal right to perform it," and here the government's broad prosecutorial discretion rendered its conduct privileged under state law and covered by the FTCA's discretionary-function exception. ECF 62 at 13–15 (private-personal analog), 25–30 (discretionary-function exception).

Accordingly, Plaintiff's "new evidence" that prosecutions "were undertaken for the specific reason of achieving [family] separation" adds nothing new. ECF 65 at 6. Instead, it improperly "revisit[s] issues already addressed," *Nelson*, 921 F.3d at 929, and is "merely cumulative," Baicker-McKee, at 1278.

2. Next, without citing any specific "new" documents, Plaintiff says the *Atlantic* materials "demonstrate the many ways in which the government acted with negligence" and without due care in detaining her, impeding her family communication, isolating her linguistically, and prolonging her detention and separation. ECF 65 at 7. But Plaintiff's

complaint and opposition to the motion to dismiss already covered this ground. *See, e.g.*, ECF 1 ¶¶ 51, 67, 86, 97 (linguistic isolation), 74, 94 (five-month confinement), 89 (impeded family communication); ECF 41 at 3–5. And the Court already analyzed her allegations, rejecting her positions concerning her separation from her father, *see* ECF 62 at 25–30; her limited contact with her family, *see id.* at 30–31; and delays in her ORR placement, *see id.* at 31–32. The *Atlantic* materials are thus cumulative in this regard as well.

3. Last, Plaintiff argues that the *Atlantic* materials "reveal[] that the government cannot claim that its actions towards Plaintiff were discretionary." ECF 65 at 7–8. Plaintiff's assertions, however, are conclusory. Plaintiff says, for instance, that the government's alleged failure to provide her father with her contact information "violated a clear ORR mandate." *Id.* But Plaintiff does not attach this "clear mandate" to her motion or otherwise cite it, again shifting the burden to the government and the Court, and again overlooking that she must "do all of the legwork" under Rule 59(e). *Eccleston*, 2020 WL 6392821, at *25. Similarly, Plaintiff says unspecified *Atlantic* materials "highlight" how the government's alleged treatment of Plaintiff was "untethered to the social, economic, or political goals of governing statutes and regulations." ECF 65 at 8. But Plaintiff does not even generally describe, much less specifically cite, any of the "goals," "statutes," or "regulations" to which she refers — or, as discussed above, the documents themselves. Unsupported assertions like these do not justify the "extraordinary remedy" of Rule 59(e) relief. Wright & Miller § 2810.1 (2023).

The Court should reject Plaintiff's new-evidence arguments and her request to amend her complaint under Rules 59(e) and 15.

## II.  Plaintiff's Clear-Error Arguments Fail

Plaintiff's second argument for Rule 59(e) relief is that the Court's decision is "clearly erroneous" — *i.e.*, "arbitrary, capricious, whimsical, or manifestly unreasonable" — in nearly every respect. *See* ECF 65 at 2, 8–26 (quoting *Wright*, 259 F.3d at 1236). Here again, however, Plaintiff improperly retreads old ground by "rehash[ing]" and "revamp[ing] previously unmeritorious arguments." *Sun Healthcare*, 214 F.R.D. at 673. Accordingly, the Court should reject her assertions of clear error on (A) the private-actor analog, (B) the discretionary-function exception, and (C) the due-care exception.

### A. Private-actor analog

Plaintiff first challenges the Court's private-actor-analog analysis as clearly erroneous under IIED and negligence law. ECF 65 at 8–15. Her arguments lack merit.

**1.** On her IIED claim, Plaintiff says the Court failed to consider the government's "malicious intent" in separating her from her father and the "harms perpetrated by government actors during [her] detention and prolonged separation." *Id.* at 9–13. Neither assertion has merit.

Plaintiff alleged in her complaint, and the parties briefed in detail, the "malicious intent" issue. *See, e.g.*, ECF 1 (complaint) ¶¶ 1-2, 18, 20, 23-26, 48; ECF 16 at 22 (motion to dismiss); ECF 41 (opposition to motion to dismiss) at 3, 5–6, 10, 13; ECF 45 (reply) at 5. Plaintiff effectively admits as much by citing her own "Opposition to Defendant's Motion to Dismiss" and several (nonbinding) district court decisions that she cited there. ECF 65 at 9–10; *see, e.g.*, *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent"). The Court considered and rejected Plaintiff's arguments, specifically acknowledging Plaintiff's allegations that the "purpose of the Pilot Program was to 'use the trauma resulting from family separations, and the

consequent media reporting about that trauma, to deter future asylum seekers.'" ECF 62 at 3 (quoting ECF 1 ¶ 2). The Court held that, while "conduct [that] was intentional" can support an IIED claim, that conduct can be "privileged" when the defendant "has a legal right to perform it," and here the government's broad prosecutorial discretion rendered its conduct privileged under state law. ECF 62 at 13–15. Plaintiff may disagree with that conclusion — but that does not make it "arbitrary, capricious, whimsical, or manifestly unreasonable," as proving clear error requires. *Wright*, 259 F.3d at 1236.

Plaintiff is also incorrect that the Court failed to consider the "harms perpetrated by government actors during [her] detention and prolonged separation." ECF 65 at 9–11. In its discretionary-function and due-care analysis, the Court addressed, in detail, Plaintiff's alleged "limited contact with her father while in government custody," "her placement in ORR custody," and her "being made to wait 160 days before she was placed in her grandmother's care." ECF 62 at 25–26, 30–32. This argument therefore lacks merit.

**2.** Next, Plaintiff challenges the Court's negligence analysis, asserting that the Court failed to consider the "manner by which the government separated Plaintiff from her father and the government's conduct, including its mistreatment of Plaintiff, in the months after effecting the initial separation." ECF 65 at 14. But the Court addressed these allegations, in detail, in its discretionary-function and due-care analysis, and Plaintiff cites no authority establishing that the Court clearly erred by not discussing these allegations again in its negligence analysis. *See* ECF 62 at 25–26, 30–32.

Plaintiff also briefly suggests that she can recover for "purely emotional harm" under a general negligence theory — but she cites no New Mexico precedent supporting her position. ECF 65 at 14–15. Plaintiff thus fails to satisfy her burden under Rule 59(e) to "do

all of the legwork" sufficient to justify extraordinary relief. *Eccleston*, 2020 WL 6392821, at *25. In any event, Plaintiff is incorrect: New Mexico courts treat negligence claims for purely emotional harm as claims for negligent infliction of emotional distress, an "extremely narrow tort that compensates a bystander who has suffered severe emotional shock as a result of witnessing a sudden, traumatic event that causes serious injury or death to a family member" — circumstances not alleged here. *Fernandez v. Walgreen Hastings Co.*, 968 P.2d 774, 777 (N.M. 1998); ECF 62 at 15–16 (citing *Fernandez*). Plaintiff also could have raised this argument in her opposition to the government's motion to dismiss but failed to do so, and Rule 59(e) cannot be used to "present new legal theories." *Navarette v. Corizon LLC*, 2020 WL 209317, at *2 (D.N.M. 2020).

Plaintiff's assertions of clear error in the Court's private-actor-analog analysis fail.

## B. Discretionary-function exception

Plaintiff's next argument is that the Court clearly erred under Rule 59(e) in "three fundamental ways" by holding that the FTCA's discretionary-function exception barred her claims. *See* ECF 65 at 15–21. All three of Plaintiff's arguments run aground.

**1.** Plaintiff first argues that the Court clearly erred by "improperly exclud[ing] the government's malicious intent in separating Plaintiff from her father from its consideration of the constitutionality of the initial separation." ECF 65 at 15. But the Court did not do that. Instead, the Court held specifically that, "[a]ssuming even that government officials *intentionally deprived [Plaintiff] of her constitutionally protected relationship with her father*, she fail[ed] at the second prong of the 'shocks the conscience' test," because the government's "interest in enforcing its immigration policy" outweighed Plaintiff's "right to associate with her father." ECF 62 at 27 (emphasis added). Plaintiff disagrees with that

conclusion — but she relies on only district court decisions, which are "not binding precedent" for this Court. *Camreta*, 563 U.S. at 709 n.7. This nonbinding authority does not establish that the Court's decision is clearly erroneous — *i.e.*, "arbitrary, capricious, whimsical, or manifestly unreasonable." *Wright*, 259 F.3d at 1236.

**2.** Next, Plaintiff says the Court clearly erred because any legal authority that the government had to separate her from her father stemming from his criminal prosecution ended when he was released from criminal custody back into immigration custody "after just 10 to 11 days." ECF 65 at 16–18. Plaintiff raised this argument during briefing on the government's motion to dismiss. *See* ECF 41 at 17 ("Defendant nowhere even attempts to explain why this little child was kept apart from her father even after he was released from U.S. Marshals custody"). And while she criticizes the Court for purportedly "fall[ing] short" in its consideration of this argument, Plaintiff herself devoted only a single sentence to the issue in her motion-to-dismiss briefing. *See id.* Plaintiff's argument fails accordingly, as a Rule 59(e) motion is "not another opportunity for the losing party to … revamp previously unmeritorious arguments," *Sun Healthcare*, 214 F.R.D. at 673, or to "present new legal theories," and a "party's failure to present its strongest case in the first instance does not entitle it to a second chance in the form of a motion to reconsider," *Navarette*, 2020 WL 209317, at *2.

In any event, Plaintiff cites no binding authority for her newly developed argument. She cites only TEDS, a U.S. Customs and Border Protection (CBP) internal policy — but TEDS does not say that government officials violate the U.S. Constitution when they fail to immediately reunite families once parents are released from criminal custody into immigration custody. Instead, TEDS provides only general directives, such as: "CBP will

maintain family unity to the greatest extent operationally feasible, absent a legal requirement or an articulable safety or security concern that requires separation," and "[g]enerally, family units with juveniles should not be separated," but "[w]hen it is necessary" to do so, "officers/agents must follow their operation office's policies and procedures and appropriate legal requirements." ECF 62 at 22–23. A policy that merely explains what "[g]enerally" "should" occur and what should be done "to the extent operationally feasible" does not divest an officer of discretion sufficient to abrogate the discretionary-function exception. Accordingly, Plaintiff does not show clear error under Rule 59(e).

    **3.**  Last on the discretionary-function exception, Plaintiff argues that the Court clearly erred by not considering the government's "approximately two-month delay in permitting Plaintiff any telephonic contact with her father and its approximately three-month delay in undertaking any significant efforts to release Plaintiff to her grandmother." *Id.* at 18–19. These arguments lack merit as well.

    Plaintiff's complaint alleged delay in permitting communication: "Starting on September 29, 2017, approximately two months after [Plaintiff] was separated from her father, her case manager began to facilitate calls between [Plaintiff] and her father." ECF 1 ¶ 89. And in her motion-to-dismiss briefing, Plaintiff raised this issue again. *See* ECF 41 at 12 (citing ECF 1 ¶ 89). The Court considered the issue and rejected Plaintiff's assertions, holding that the "government's conduct was reasonable" under the circumstances and "protected by the due care exception." ECF 62 at 29–30. Plaintiff is thus improperly attempting to "relitigate old matters" already asserted and rejected. Wright & Miller § 2810.1. And to the extent that Plaintiff argues that the Court did not address this issue sufficiently, Plaintiff herself devoted only a few sentences to the issue in her complaint and motion-to-dismiss briefing.

*See* ECF 1 ¶ 89; ECF 41 at 12. A Rule 59(e) motion is "not another opportunity for the losing party to … revamp previously unmeritorious arguments," *Sun Healthcare*, 214 F.R.D. at 673, or to "present new legal theories," and a "party's failure to present its strongest case in the first instance does not entitle it to a second chance in the form of a motion to reconsider," *Navarette*, 2020 WL 209317, at *2.

For the alleged delay in releasing Plaintiff, Plaintiff says this Court "considered only the time that elapsed between when the vetting of Plaintiff's grandmother commenced in November of 2017, and when Plaintiff was released into her grandmother's custody, a period of under two months," and "improperly failed to take into account the three-month delay" preceding this period. ECF 65 at 19–21. Plaintiff is incorrect. This Court specifically analyzed the "government's decision to keep [Plaintiff] in ORR custody *for 160 days* before releasing her to her grandmother" and thus considered the entire five-month period to which Plaintiff refers. ECF 61 at 31–32 (emphasis added). The Court concluded that Plaintiff "[did] not allege facts to suggest that her delay was 'unnecessary'" — the "allegations instead suggest[ed] that government officials were working with limited information from [Plaintiff] and her father to safely place [Plaintiff] in a home on the other side of the country," and Plaintiff "[did] not allege facts which suggest[ed] the government was unreasonable in how it pursued this directive" to place Plaintiff with an adult relative. *Id.* at 32. Plaintiff disagrees — but that does not prove "arbitrary, capricious, whimsical, or manifestly unreasonable" conduct, as required. *Wright*, 259 F.3d at 1236.

Plaintiff's challenges to the Court's discretionary-function analysis thus fail.

### C. Due-care exception

In her last attempt to undo the Court's final judgment, Plaintiff claims that the Court clearly erred in its due-care analysis by failing to consider "crucial factual allegations." ECF 65 at 21–26. Like her other 59(e) arguments, these arguments lack merit.

**1.** First, without citing any "crucial factual allegations" and in a conclusory fashion, Plaintiff contends that no legal directive "authorized, let alone mandated, Plaintiff's prolonged separation from her father." *Id.* at 21–23. But this Court disagreed and offered a detailed analysis of the applicable law, including the Trafficking Victims Protection Reauthorization Act (TVPRA), *see* ECF 62 at 20–21; "[f]ederal regulations elaborat[ing] on the government's obligations" to juveniles without legal status, *id.* at 21–22; the *Flores* consent decree, *see id.* at 23–24; and the U.S. Constitution, *see id.* at 24–25. The Court then applied this law to Plaintiff's factual allegations, explaining how the government acted with due care concerning her "physical separation from her father," *id.* at 26–30; the "government's conduct in providing only short calls between [her] and her father," *id.* at 30–31; her "placement in ORR custody," *id.* at 30; and the "government's decision to keep [her] in ORR custody for 160 days before releasing her to her grandmother," *id.* at 31–32. Plaintiff's only response to this thorough analysis is that other district courts have decided the issues differently. ECF 65 at 22–23 (citing various district court decisions). But district court rulings are "not binding precedent," and this Court's reasoned disagreement with nonbinding authority is not clear error. *Camreta*, 563 U.S. at 709 n.7.

**2.** Finally, Plaintiff says the Court clearly erred because the government "did not exercise due care in [her] treatment" by "fail[ing] — for approximately two months — to facilitate *any* communication between Plaintiff and her parents"; by "effectively forcing

her into linguistic isolation for the entire five-month period she was separated"; and by failing to "timely begin investigating Plaintiff's grandmother as a potential custodian." ECF 65 at 23–26. As the government has already explained in detail in this brief, Plaintiff raised all these arguments before the District Court in her complaint and motion-to-dismiss briefing, *see, e.g.*, *supra* at 7–15, and this Court considered and rejected those arguments in its thorough due-care analysis, *see* ECF 62 at 25–32. Plaintiff's only response to the Court's analysis is that other district courts ruled differently — but again, this Court's reasoned disagreement with nonbinding district court rulings is not clear error. Plaintiff merely "rehash[es] previously considered and rejected arguments" and fails to show clear error. Baicker-McKee, at 1279.

Plaintiff's challenges to the Court's due-care analysis thus fail as well.

## CONCLUSION

The Court should deny Plaintiff's Rule 59(e) motion.

May 18, 2023                                   Respectfully submitted,

                                               ALEXANDER M.M. UBALLEZ
                                               *United States Attorney*

                                               *s/ Benjamin G. Minegar 5/18/2023*
                                               BENJAMIN G. MINEGAR
                                                *Assistant United States Attorney*
                                               P.O. Box 607
                                               Albuquerque, NM 87103
                                               (505) 346-7274
                                               benjamin.minegar@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2023, I filed the foregoing document electronically through the CM/ECF system, causing all parties or counsel to be served by electronic means as more fully reflected on the Notice of Electronic Filing.

                                               *s/ Benjamin G. Minegar*
                                               BENJAMIN G. MINEGAR